# CHARLESTON.

THE CONTINENTAL SUPPLY COMPANY *v.* D. H. STEPHENSON.

Submitted May 8, 1923.   Decided June 19, 1923.

1. SALES—*Delivery and Consignment of Drilling Line to Railroad Station Where Buyer Desired it Unloaded, Within Time Promised by Seller's Agent Held Compliance.*

   Where a defendant purchases a drilling line from plaintiff, and the manager of the plaintiff says, at the time of said purchase, that he is sure he can deliver the line in thirty days, that he thinks he can deliver the line in thirty days, and there is no express contract as to the place of delivery; when the plaintiff causes said line to be delivered to a carrier and causes it to be consigned to the defendant at the railroad station where the defendant wishes said line to be unloaded, within thirty days, plaintiff's obligation has been fully met.   (p. 316).

2. SAME—*Conditions Under Which Damages Allowed for Breach of Warranty Under Notice of Recoupment Stated.*

   In order to be allowed damages, under a notice of recoupment, for the breach of a warranty, as to the fitness of a drilling line, for the purpose for which it is purchased; a

warranty, either express or implied, must be shown, and a valuable consideration must be paid, or agreed to be paid, by the warrantee to the warrantor. (p. 316).

3.  SAME—*No Enforceable Warranty of Drilling Line Purchased by a Dealer for Accommodation and Sold at Cost.*

Where a defendant who is engaged in drilling oil and gas wells calls upon a dealer in oil and gas well supplies and says to the dealer's manager that he has to have a drilling line; and is informed, by said manager, that it had no lines on hands, and the dealer is then urged by the defendant to get him a line, whereupon said manager tells him that he can get him a line from another dealer in oil well supplies, telling him that it was a Roebling line, that it was as good as any and was used generally throughout the oil country, and, at the urgent request of the defendant, purchases said Roebling line from such other dealer and ships it to the defendant, and charges the defendant, for said line, the same amount he had to pay for the same to such other dealer, there is no enforceable warranty of the fitness of said Roebling line.

Error to Circuit Court, Kanawha County.

Action by the Continental Supply Company against D. H. Stephenson. Verdict for defendant, and an order entered overruling a motion to set aside the verdict, and plaintiff brings error.

*Reversed.*

*Leo Loeb,* for plaintiff in error.

*W. E. R. Byrne* and *Eakle & Alderson* for defendant in error.

MCGINNIS, JUDGE:

This case comes here from the Circuit Court of Kanawha County upon its refusal to grant an appeal from the Court of Common Pleas of said County.

It was tried on a motion for judgment by the plaintiff, Continental Supply Company, a corporation, against the defendant, D. H. Stephenson, which notice charges that the

defendant is indebted to the plaintiff in the sum of $558.00, for one certain 7/8 inch by 3000 foot Roebling Drilling line sold and delivered to the defendant at his request.

The case was tried in the said Common Pleas Court on the plea of non-assumpsit, and a notice of recoupment, upon which issue was joined, and the case was submitted to a jury which resulted in a verdict for the defendant. A motion was made by the plaintiff to set aside the verdict, and the motion was overruled by the court. Five separate bills of exception were taken to the rulings of the trial court, and on petition to the Circuit Court and appeal was refused by said Circuit Court. The notice of recoupment is to the effect that the defendant had, on the. . day of May 1919, purchased from plaintiff a 7/8 inch by 3000 foot Hazard drilling line to be delivered to the plaintiff within 30 days from that date, at the price of $502.00; that the defendant failed to deliver the Hazard line within the said 30 days or at any time since said date, that the plaintiff, "Without any contract therefor, with the defendant and with the knowledge and consent or approval of the defendant, shipped to defendant a 3000 foot Roebling line charging the defendant therefor $558.41; that said Roebling line was warranted and guaranteed, by the plaintiff, to be as good a line for the purpose for which it was to be used as the line which was first ordered by defendant, to-wit the Hazard line; that said Roebling line was not reasonably fit for the purpose for which it was to be used; that it was defective in that there was a tight stran in the line, which rendered the line practically worthless for the purpose of drilling oil wells; that by reason of the defect in said Roebling line, he was forced to shut down his work and pay certain amounts to his workmen, and by reason of the failure of the plaintiff to deliver said lines or either of them in 30 days as aforesaid, and by reason of said defects in said Roebling line, he was compelled to purchase another line which he did do from the plaintiff at the cost and damage to the defendant of $651.00; that plaintiff lost three days time while waiting for the last mentioned line to be delivered to him, not being able to continue his operations with said Roeb-

ling line.'' And defendant sets forth in said notice the various amounts that he was damaged by reason of the several breaches of the contracts and warranties set forth in said notice, the aggregate of which is $387.44, and the defendant claims he has been damaged by reason of the matters in the notice contained to the amount claimed by the plaintiff in his notice of motion for judgment in this case.

Briefly, the material facts disclosed by the evidence are as follows: The plaintiff, the Continental Supply Company, a corporation, in the month of May, 1919, was engaged in the business of selling oil and gas well supplies, with its principal place of business in St. Louis, Missouri, and it maintained a branch house in Charleston, West Virginia; G. W. Stage was its Charleston manager. The defendant, D. H. Stephenson was, and had been for a number of years, engaged in drilling oil and gas wells. On May 12, 1919 he was building a rig and fixing to drill a well about two miles from Shelton Station of the Coal and Coke Railroad, in Clay County, West Virginia and on the day aforesaid, among other supplies, he purchased one Hazard drilling line of certain dimensions, given in the order, which line was purchased through the plaintiff's manager, G. W. Stage, at Charleston, and as to what was said at the time of the purchase, by the plaintiff's manager and the defendant, there seems to be no controversy. There is, however, a difference as to the understanding of these two men. The plaintiff understood that the line was to be delivered to the carrier in 30 days, the defendant's understanding was that it was to be delivered at Shelton in 30 days. The plaintiff's manager, Stage, says in answer to a question by plaintiff's counsel: ''I told Mr. Stephenson that we didn't have it in stock, and by shipping it from the factory we would allow him the freight on it, and give him a better discount than we would out of stock; and he said, 'Can you deliver the line in 30 days?' I think it was 30 days, the time mentioned, and I said I thought we could, and along these lines took the order and sent it in.''

And again the defendant, when asked what conversation was had with Mr. Stage about the wire drilling line, said: ''Well, he told me what kind of a line he had, and so I bought

.a drilling line and the sand line from him, shipped from the factory in order to save freight, local freight, from Charleston. I would have to pay that. The conversation was just about as he gave it. My understanding was there was something about three weeks, I said something about three weeks. He said, 'You know the condition of the railroads' he says 'I think I can deliver it in 30 days, I am sure, I think I can deliver it in 30 days.' I think that is about the conversation about delivering that line.''

How that conversation can be construed into a binding contract to deliver this line either at Shelton, or to the railroad at the factory within 30 days we fail to see. The defendant's manager evidently knew that two difficulties had to be overcome: First, that the factory might not have this line in stock, and it might have to be manufactured, and some delay might be incurred for that reason; and Second: The condition and uncertainty of the railroad facilities at that time, were such that no positive and binding date could be fixed for the delivery of this line, hence he said: ''I am sure I think I can deliver it in 30 days.''

· This line was ordered from the Hazard Manufacturing Company by the plaintiff to be shipped to the defendant at Shelton, West Virginia, on May 16, 1919, and was shipped from Wilkes-Barre, Pennsylvania, on June 4, 1919, and consigned to the defendant. Upon the delivery of this line to the railroad company, it became the property of the defendant. It did not arrive at Shelton until the 13th of July, 1919. The plaintiff should not be held liable for any damages caused by this delay. It did not guarantee that the line would be delivered at Shelton in 30 days, and the delay was not caused by any act of the plaintiff.

During the long period that the line was in transit, defendant's old line became worn to the point where it was dangerous to use it. His employees were afraid of it, and it became necessary to shut the work down until a new line could be secured. This of course entailed additional operating expense. To remedy the situation, defendant, on July 7th or 8th called Mr. Stage, plaintiff's manager at

Charleston and explained his predicament, concluding with the statement that he "would have to have a line". To meet this emergency, Stage volunteered to purchase a line for the defendant from the National Supply Company. Defendant inquired what kind of a line it would be, and Stage replied that it would be a Roebling line, that it was "Just as good as any", and that they were "used in the oil country right along." Defendant agreed to this arrangement, plaintiff paid $558.00 for it, charged the defendant with the same amount, and it is to recover this sum that the present action was brought. These circumstances indicate to us that the plaintiff was not selling this line to the defendant, but was acting as the defendant's agent in the purchase from the National Supply Company. Now while it is true that the plaintiff alleges in its notice and affidavit that the plaintiff sold and delivered this line to the defendant, at his special instance and request, stating the amount due and owing to the plaintiff from the defendant to be the sum of $558.00 with interest from July 29, 1919. This technical variance between the notice and the proof is not material in this proceeding.

The statutory method of enforcing payment of debts by motion for judgment was never intended to be in any way encumbered with the technical niceties of common law pleading and procedure. "The rule governing notices is that they are presumed to be the acts of the parties and not lawyers. They are viewed with great indulgence by the courts, and if the terms of the notice be general, the court will construe it favorably and apply it according to the truth of the case, as far as the notice will admit of such application." *Board of Supervisors* v. *Dunn, Grat.* (Va.) 612; *Board of Supervisors* v. *Parsons,* 22 W. Va. 308; *Steptoe* v. *Auditor,* 3 Rand. (Va.) 221; Judge LIVELY, in delivering the opinion of this court, in *Bank* v. *Dixon,* decided at this term, said:

> "The facts need not be stated with the exactitude and clearness of a common law pleading, but it is imperative that a cause of action must arise from the facts stated."

In the present case the facts stated clearly show a cause

of action; and we hold that, from the facts proven, the plaintiff acted as the agent of the defendant and bought this line for him from the National Supply Company, and in such a case there could be no warranty of the fitness of the line. There was no consideration for such a warranty. Plaintiff charged the defendant exactly what the plaintiff had to pay for it.

And again, if we view this case from the standpoint that the plaintiff did sell this Roebling line to the defendant, still, under the facts in this case, there was no warranty as to the fitness of the line. Plaintiff had no line at the time that the line was first discussed, nor did it have one when, upon the urgent request of the defendant, the latter was informed by Stage that a Roebling line could be purchased from the National Supply Company. The Roebling line was never seen by either Stage or the defendant prior to its shipment. to the defendant. The plaintiff did not handle the Roebling lines, but under the urgent request of the defendant, this Roebling line was shipped to him, billing it to him at the same price it paid for it. Now if the plaintiff had been shown to have been a dealer in these Roebling lines, and that it was selling them in the course of its business, and that, it knew the purpose for which the defendant was going to use the line, an implied warranty would be understood. But in this transaction there was absolutely no consideration paid or agreed to be paid to the plaintiff. for this warranty and there can be no warranty without consideration. A warranty is a Conditional Contract, either express or implied, based upon a valuable consideration. This sale by the plaintiff to the defendant, if it could be so construed, and the purchase of this line from the National Supply Company, were simultaneous transactions and the plaintiff only demanded the money actually paid by him at the time for this Roebling line.

Hence we say that, in either view of the case, there was no warranty of the Roebling line, and no damage incurred by the defendant, by reason of the unfitness thereof, is chargeable to the plaintiff.

The sale of the third and last line was entirely an independent contract made between the plaintiff and defendant for the purchase of a 3000 foot Hazard line, at the price of $651.00 and for which the defendant has paid in full, and the damages claimed in defendant's notice of recoupment for the purchase and delivery of this line depends upon the alleged warranty of the Roebling line, and the defendant, having failed to show a warranty of the Roebling line, no damage can be charged against the plaintiff caused by the purchase or delivery of this line.

We, therefore, conclude that the defendant has failed to prove the allegations set up in his notice of recoupment in any particular and that the plaintiff's instruction No. 1 directing a verdict for the plaintiff, should have been given and having come to this conclusion it necessarily follows that the defendant's instructions Numbers 3 and 4 should not have been given.

We, therefore, set aside the verdict of the jury, reverse the judgment, and remand the case for a new trial.

                                                    *Reversed.*